TODD W. EDDINS, #5544
1001 Bishop Street
Pauahi Tower, Suite 1320
Honolulu, Hawaii 96813
Telephone No. 808 538.1110
Facsimile No. 808 528.2440
E-Mail: Eddins@Eddinsdefense.com

Attorney for Defendant James Troiano

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 05-00261 HG |
| Plaintiff, | ) MEMORANDUM OF LAW IN<br>) SUPPORT OF MOTION |
| vs. | ) |
| JAMES TROIANO, | ) |
| Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

James Troiano (Troiano) asserts that his case should be severed from Wendell Toki's (Toki) case because the defendants are inappropriate for joinder pursuant to FRCP Rule 14, as well as the applicable case law with respect to the dictates of Bruton v. United States, 391 U.S. 123 (1968), and its progeny.

FRCP Rule 8(b) serves as the basis for joinder. The rule permits the joinder

of defendants who allegedly committed the same crime. Although joinder is generally favored because it promotes efficiency, FRCP Rule 14 provides that defendants' trials may be severed when it is apparent that a joint trial would cause prejudice.[1] "[W]hen defendants have been properly joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is serious risk that a joint trial would prejudice a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534 (1993).

Troiano contends that he is entitled to a severance of his case from that of his co-defendant because of the prejudice to him that a joint trial entails. Specifically the prejudice to Troiano arising from the abrogation of his sixth amendment right to confrontation,[2] as well as the prejudice attendant to the presentation of mutually exclusive defenses by each co-defendant warrant severance.

On May 18, 2005, Toki proffered a nearly two and one half hour statement to two HPD detectives.[3] His statement is inculpatory to Troiano as it extensively, and

---

[1] FRCP Rule 14 provides:
  **Relief From Prejudicial Joinder.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

[2] The Bruton aspect of the instant motion presumes that Toki will not testify. Troiano's sixth amendment right to confrontation is preserved in the event Toki testifies.

[3] Akin to FRCP Rule 14(b) ("Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence."), and due to the 137 page

2

indeed almost exclusively, details Troiano's conduct before and after the Brown Bottle Liquor store robbery. In his closing report, the lead HPD Detective, Brian Johnson, summarizes Toki's statement as follows:

> TOKI said prior to the robbery TROIANO had approached him at The Brown Bottle liquor store and asked him questions about the stores security system, as well as about the location of the safe and the arrival time of the owner. TOKI said he provided TROIANO with information he requested and that the ATM was not alarmed. TOKI said he thought TROIANO was joking when he said he was going to "DO" (rob) the store but asked him not to do it while his mother was present.
>
> After the robbery TOKI said TROIANO contacted him and requested he meet with him at the 7-Eleven store in Pearl City to give him money. TOKI added that TROIANO said the money was for the purchase of chickens and TOKI'S "share". TOKI said that he met with TROIANO as requested and that TROIANO gave him $5,000.00 in a duffle bag. TOKI admitted that he had spent some of the money. TOKI positively identified TROIANO in a photographic line-up.

Troiano's constitutional right to confrontation is implicated by the admission of his co-defendant's statement. In <u>Bruton v. United States</u>, 391 U.S. 123 (1968), the United States Supreme Court ruled that a defendant's sixth amendment right to confrontation is violated when the unredacted facially incriminating confession of a co-defendant is introduced at their joint trial, even if the jury is specifically instructed to consider the confession only against the co-defendant. The Court noted that limiting instructions were fruitless in the case of a co-defendant's

---

length of the transcribed copy of Toki's statement, the defense requests that it be permitted to furnish the court with a transcript of Toki's statement prior to the hearing on the motion. It should be noted that Toki filed a motion to suppress statement, and on September 12, 2005, the government filed Exhibit "A" to United States' Opposition to Defendant Toki's Motion to Suppress Statements, in which Exhibit "A" was a transcription of Toki's statement.

incriminating statements against a defendant because there was a substantial risk that the curative instructions would be ignored. The Court reasoned that

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

391 U.S. at 135-36.

Thereafter, in Richardson v. Marsh, 481 U.S. 200 (1987), the Supreme Court considered the constitutional propriety of admitting into evidence a defendant's confession which was redacted to eliminate reference to the co-defendant. The confession was not incriminating on its face, but became incriminating when linked with other evidence introduced at trial. The Court held "that the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to [the defendant's] existence." 481 U.S. at 211.

In a footnote, Marsh stated: "We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or a neutral pronoun." Id. at 211 n. 5. Subsequently, the Supreme Court established that even statements that do not explicitly name a co-defendant are forbidden if they are redacted in such a way as to make the naming of the co-defendant obvious to the jury. See Gray v. Maryland, 523 U.S. 185 (1998). Gray clarified that the substitution of a neutral pronoun or symbol in place of the defendant's name is not permissible if it is obvious that an alteration has occurred to protect the identity of a specific person. United States v. Peterson, 140 F.3d 819 (9th Cir. 1998). Peterson analyzed Gray as follows:

> In Gray, the Court held that redactions that replace a name with an obvious blank space, a word such as "deleted," or a symbol or other obvious indication of alteration so closely resemble *Bruton's* unredacted statements as to warrant the same legal results. 523 U.S. at ----, 118 S.Ct. at 1152. The Court reasoned that a jury will often realize that such a redacted confession refers specifically to the defendant, and an obvious deletion may call the jurors' attention specifically to the removed name and encourage speculation about the reference. Id. at ----, 118 S.Ct. at 1152. The Court concluded that "*Bruton's* protected statements and statements redacted to leave a blank space or some other similarly obvious alteration, function the same way grammatically. They are directly accusatory." Id.

140 F.3d at 822-23. In Peterson, the redaction of the defendant's name for "person X" was clearly impermissible because "[t]he codefendant was pointing an accusatory finger at someone and it was not difficult for the jury to determine that that person was the other defendant on trial." 140 F.3d at 822.

5

In the instant case, Toki's inculpatory statements relating to Troiano appear throughout his interrogation. Undoubtedly, Toki incriminates Troiano with virtually every comment. The largely discredited idea that "neutral pronouns" or "symbols" can replace Troiano's name, so as to obscure his identity, is unworkable. Given Detective Johnson's extensive queries and comments relating to Troiano and the inculpatory responses of co-defendant Toki pertaining to Troiano, it impossible to eliminate Troiano's name and any reference to his existence.

Aside from the infringement of Troiano's constitutional right to confrontation, the mutually exclusive defenses likely to be proffered by each co-defendant warrant separate trials.[4]

In <u>United States v. Mayfield</u>, 189 F.3d 895 (9th Cir. 1999), the court expressed serious misgivings with respect to a jury's ability to make a reliable judgment of the guilt or innocence of a co-defendant when mutually exclusive defenses are raised. The court ruled that the defendant had shown both that he was denied a specific trial right and that the mutually exclusive defenses raised prevented the jury from making a reliable judgment about Mayfield's guilt or innocence. The court reasoned that

> the probability of reversible prejudice increases as the defenses move beyond the merely inconsistent to the antagonistic. When defendants present mutually exclusive defenses, the jury often cannot assess the

---

[4] Based on the content and tenor of Toki's accusatory statements, it is virtually certain that the defendants will present mutually exclusive defenses.

6

> guilt or innocence of the defendants on an individual and independent basis. Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant ... [c]ross examination of the government's witnesses becomes an opportunity to emphasize the exclusive guilt of the other defendant ... [c]losing arguments allow a final opening for codefendant's counsel to portray the other defendant as the sole perpetrator of the crime.

Id. at 899-900. Citations and quotation marks omitted.

As in Mayfield, Troiano and Toki will present antagonistic defenses, and thus the prosecution will be aided in its quest to convict the defendants by "second prosecutors" – each defense counsel. Troiano submits that the jury will be unable to make a reliable judgment with respect to his guilt or innocence unless the cases are severed.

A severance of the defendants for separate trials would also comport with the directives of the American Bar Association. The ABA has adopted a model standard for dealing with situations involving multiple defendants and codefendant confessions. Standard 13-3.2, II ABA Standards for Criminal Justice 13.34 (2d ed. 1986 Supp.), entitled "Severance of defendants," provides in relevant part:

>  (a) When a defendant moves for severance because an out-of-court statement of a codefendant makes reference to, but is not admissible against, the moving defendant, the court should determine whether the prosecution intends to offer the statement in evidence as part of its case in chief. If so, the court should require the prosecuting attorney to elect one of the following courses:
>    (i)   a joint trial at which the statement is not admitted into evidence.
>    (ii)  A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the statement will not prejudice the

    moving defendant; or
(iii) severance of the moving defendant.

In conclusion, a joint trial will result in an infringement of Troiano's constitutional right to confrontation. Redactions to Toki's statements will be pointless because the identity of Troiano will be unmistakably obvious and will not alleviate the prejudice to him. His identity will be easily discernible. Further, the jury will not be able to make a reliable judgment of the guilt or innocence of Troiano because mutually exclusive defenses will be presented.

Troiano respectfully submits that this Honorable Court grant a severance of his case from that of Toki's case and permit separate trials.

DATED: Honolulu, Hawai'i, February 23, 2006

BY: _____
TODD EDDINS
ATTORNEY FOR
DEFENDANT JAMES TROIANO

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was duly served upon the following parties via hand delivery on February 23, 2006.

CLARE CONNORS
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850

PAMELA TAMASHRIO
Ocean View Center
707 Richards Street, PH 7
Honolulu, Hawaii 96813

Attorney for DEFNDANT WENDELL TOKI

DATED: Honolulu, Hawaii, February 23, 2006

TODD EDDINS
ATTORNEY FOR JAMES TROIANO