TODD W. EDDINS, #5544
1001 Bishop Street
Pauahi Tower, Suite 1320
Honolulu, Hawaii 96813
Telephone No. 808 538.1110
Facsimile No. 808 528.2440
E-Mail: Eddins@Eddinsdefense.com

Attorney for Defendant James Troiano

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00261 HG |
|---|---|---|
| Plaintiff, | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF MOTION |
| vs. | ) ) | |
| JAMES TROIANO, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

### Discovery Materials Sought

Defendant James Troiano (Troiano) seeks the following discovery materials:

1.  All statements relating to the instant case made by Tony Esparza (Esparza) and co-defendant Wendell Toki (Toki) to any law enforcement agency.

[Esparza admits to being one of the two persons who robbed the Brown Bottle liquor store. He is expected to testify on behalf of the government].

2. All documents, reports, materials or information in the instant case relating to plea agreements involving Tony Esparza and Wendell Toki; including any "understandings", "promises", "inducements", or "consideration agreements" between the prosecution or any law enforcement agency and Esparza or Toki.

3. All documents, reports, or information relating to pending charges in any jurisdiction pertaining to Silvia Robinson. Also, any "understandings", "promises", "inducements", or "consideration agreements" between the prosecution or any law enforcement agency and Robinson.

Robinson is a prostitute and nightclub stripper. Reportedly, she provided information to law enforcement agents that she spent time with Troiano and Esparza at a Waikiki hotel subsequent to the robbery. It is believed that she is from California and that she has numerous pending criminal charges.

**Legal Argument Supporting Disclosure**

The foregoing information is sought pursuant to In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court declared that due process is offended when the prosecution withholds evidence favorable to the accused. Id. at 87. Exculpatory evidence favorable to the accused is not confined to evidence that reflects upon the culpability of the defendant. Exculpatory evidence also includes

evidence of an impeachment nature that is material to the case against the accused. Napue v. Illinois, 360 U.S. 264 (1959) ("[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying that a defendant's life or liberty may depend."). Id, at 269.

Any implication, promise or understanding that the government would extend leniency in exchange for a witness' testimony is relevant to the witness' credibility. United States v. Giglio, 405 U.S. 150, 154 (1972). The court reasoned that "[t]he [informants] credibility as a witness was therefore an important issue in the case, and <u>evidence of any understanding or agreement as to a future prosecution</u> would be relevant to his credibility and the jury was entitled to know of it." Id. at 154-55. emphasis added.

The absence of an ironclad, signed, sealed contract does not establish that no other information affecting the credibility of the witness exists. Id. at 155. See, also, Commonwealth v. Strong, 761 A.2d 1167 ("an understanding that [the witness] would be treated with considerable leniency in exchange for his testimony. . . although not articulated in an ironclad agreement, was sufficient to implicate the due process protections of *Brady*." 761 A.2d at 1174). To the contrary, an unconsummated agreement can create an even greater incentive for a witness to testify in a manner that he perceives to be favorable to the government.

7

See, e.g. State of Louisiana v. Lindsey, 621 So.2d 618 (La.Ct.App. 1993) (promise of favorable consideration in exchange for testimony deemed credible gave witness "a direct personal stake" in defendant's conviction; "The fact that a specific reward was not guaranteed through a promise or a consummated plea agreement, but was expressly contingent on the state's good faith and satisfaction with [the witness's] testimony, served only to strengthen any incentive to testify falsely in order to secure [the defendant's] conviction.").

It is quite apparent that the government's constitutional requirement to disclose material evidence favorable to the defendant is not limited to formal, consummated, binding agreements exacted of the state by a state witness. As the Court reasoned in United States v. Bagley, 473 U.S. 667 (1985): "[t]he fact that the stake was not guaranteed through a promise or binding contract, but was expressly contingent on the Government's satisfaction with the end result, served only to strengthen any incentive to testify falsely in order to secure a conviction". Id. at 683. Impeachment evidence, because it is evidence favorable to the accused, falls within the *Brady* rule. Agreements or inducements to a prosecution witness, such as Esparza or Toki, strengthen the incentive to testify falsely in order to secure a conviction, and thus, such "agreements" or "tacit understandings" are relevant to the bias and credibility of a witness and thus serve to undermine a witness's testimony. If disclosed and used effectively, impeachment evidence may make the

8

difference between conviction and acquittal. "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." Id. at 676 (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)).

The Sixth Amendment to the U.S. Constitution is also implicated by failing to disclose the information sought by Troiano. "Confrontation" means more than being allowed to confront the witness physically; it also means being allowed to cross-examine the witness. Davis v. Alaska, 415 U.S. 308 (1974). Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Through cross-examination, the defense is afforded the opportunity to reveal possible biases, prejudices, or ulterior motives of the witness. "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Id. at 316-17. Even in cases where cross-examination has not been directly restricted, the Supreme Court has recognized that constitutional error may result from the "Government's failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination." Bagley, 473 U.S. at 678.

The testimony of Esparza, Toki, or Robinson in the instant case will, in the absence of a particularized plea agreement, illustrate their desire to "curry favor"

with law enforcement, so that any pending or future criminal prosecutions can be mitigated through their assistance. As the cases above show, it is immaterial that a specific "plea agreement" exists. Instead, a witness's belief, subject to cross-examination, as to the benefits of assistance as it relates to the person's own legal situation, serves as critical impeachment evidence to demonstrate bias and undermine his credibility. Consequently, the materials denoted above should be provided to the defense.