ORIGINAL

TODD W. EDDINS, #5544
1001 Bishop Street
Pauahi Tower, Suite 1320
Honolulu, Hawaii 96813
Telephone No. 808 538.1110
Facsimile No. 808 528.2440
E-Mail: Eddins@Eddinsdefense.com

Attorney for Defendant James Troiano

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) CR. NO. 05-00261 HG |
|---|---|
| Plaintiff, | ) |
| | ) SUPPLEMENTAL |
| | ) MEMORANDUM OF LAW IN |
| vs. | ) SUPPORT OF MOTION IN LIMINE |
| | ) TO EXCLUDE PROFFER |
| JAMES TROIANO, (01) | ) INFORMATION |
| | ) |
| Defendant. | ) Date: March 23, 2006 |
| | ) Time: 8:30 a.m. |
| | ) Judge: HELEN GILLMOR |
| | ) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE PROFFER INFORMATION**

Defendant James Troiano (Troiano), through his prior counsel, previously filed a motion in limine to exclude proffer information. It has not yet been heard. The instant memorandum supplements the prior motion.

The proffer information related to statements Troiano made to government agents on July 11, 2005 between 10:25 a.m. and 12:14 p.m. at the Federal Detention Center. Present at the interrogation were Troiano's attorney at

the time, Pamela Byrne, A.T.F. Agent C. Pang, and Honolulu Police Department (HPD) Detectives Derek Kiyotoki and Brian Johnson.[1] A letter to Troiano dated June 27, 2005, from the government "confirm[ed] the terms under which you will provide a proffer to the United States Attorney's Office for the District of Hawaii ("Office") regarding the criminal behavior of others."[2]

In an account characterized by Detective Johnson as "rambling" and "jump[ing] from subject to subject", Troiano reportedly provided inculpatory statements relating to his involvement in the Brown Bottle liquor store robbery. He also discussed at length the criminal behavior of co-defendant Wendell Toki (Toki), robber and government witness Tony Esparza (Esparza), and the criminal behavior of numerous other individuals unaffiliated with the Brown Bottle robbery. Troiano's disjointed, rambling monologue relating to his knowledge of criminal behavior ended abruptly when "Troiano started to talk about a party he attended with a male named 'Bozo' and 'Jake'". As Detective Johnson noted: "At that time the interview was ended at about 1214 hours."

Troiano has previously been diagnosed as suffering from psychiatric disorders, including a severe level of Bi-polar disorder. This is his first prosecution in federal court.

When he made statements on July 11, 2005, Troiano believed he was doing so in anticipation of a five-year term of incarceration.[3] Troiano had not seen any plea agreement in writing, but was assured that by providing information he would in return ultimately receive a five-year prison term. The June 27, 2005 letter from the United States attorneys is inexact and imprecise. Troiano did not

---

[1] This information is gleaned from the only document currently in the defense's possession relating to Troiano's alleged statements, a "CID Closing Report" (pages 11-15) dated July 31, 2005 prepared by HPD Detective Johnson.

[2] The June 27, 2005 letter is attached as Exhibit "A". The unsigned letter stamped "Client Copy" is the only document present defense counsel possesses with respect to the matter.

[3] It is anticipated that Troiano will testify at the hearing on this motion.

2

knowingly understand its terms (at least as to the meaning the government presumably ascribes to the letter). Troiano was under the belief that if he eventually decided not to accept the five-year sentence, and thereby proceeded to trial on the Brown Bottle liquor store charges, his statements could not be used in *any fashion* at trial as evidence against him. Attendant to this understanding, Troiano supposed that because he was providing information "regarding the criminal behavior of others" for a myriad of other crimes, his statements would not be used against him with respect to the Brown Bottle case. Troiano understood the June 27, 2005 letter to *not* implicate his right to testify in the Brown Bottle case. His actions in providing a statement were not voluntarily and knowingly made because he believed the letter protected him absolutely in the event he asserted his constitutional right to testify in the Brown Bottle robbery.

The seeds of Troiano's understanding are contained in paragraphs 2 and 3 of the June 27, 2005 letter:

> (2) The prosecution will not offer in evidence in its case-in-chief for <u>the above-referenced case</u>, [Cr. No. 05-0261 HG] or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, <u>any statements made by Client at these meetings</u>, except in a prosecution for false statements, obstruction of justice or perjury;
>
> (3) Notwithstanding paragraph (2) above, the prosecution may use (a) information derived directly or indirectly from any of the meetings for the purpose of obtaining and pursuing leads to other evidence, which evidence may be used in any prosecution of Client by the prosecution, and (b) statements made by Client and all evidence obtained directly or indirectly from those statements for the purpose of cross-examination should Client testify, or to rebut any evidence offered by or on behalf of Client in connection with the trial and/or at sentencing, <u>should any prosecution of Client be undertaken</u>[.]

emphasis added.

While Troiano did not fully comprehend the "legalese" present throughout the letter, he unequivocally believed that his right to testify without *any* use of his statements was safeguarded by the document. Troiano justifiably entertained this critical protection of his constitutional right to testify because paragraph 2 specifically mentioned the "above-reference case" and paragraph 3 specifically mentioned use of statements "should any prosecution of Client be undertaken." Troiano was, of course, already being prosecuted in the Brown Bottle case, as a complaint was filed on May 19, 2005 and he made an initial appearance on June 7, 2005. So he understood the paragraph 3 "should any prosecution be undertaken" language to permit the use of his statements in any subsequent prosecution unrelated to the Brown Bottle. Moreover, given that he believed that he was providing information "regarding the criminal behavior of others", and did so at length during the interrogation, he rightfully believed that *his* recounted criminal behavior relating to the Brown Bottle would not be used in any manner as evidence against him.

In sum, should the inexact and ill-defined June 27, 2005 letter be construed or interpreted to waive his rights pursuant to Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure, then Troiano contends that the agreement to waive his rights was not entered into knowingly or voluntarily, and therefore his statements on July 11, 2005 should be precluded from use at trial. See, United States v. Mezzanato, 513 U.S. 196, 210 (1995).

A further ground Troiano asserts for precluding evidence relating to his purported statements on July 11, 2005 is that he was not proffered his Miranda rights. It is well-settled that in situations involving custodial interrogation that

4

> *Prior to any questioning* the person *must* be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right of the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently.

Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). Emphases added. Even if an attorney is present, such as during Troiano's interrogation, the thrust of the *Miranda* protections is that it is a personal right against self-incrimination. The Court in *Miranda* explained the need for giving a warning as follows:

> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system--that he is not in the presence of persons acting solely in his interest.
> ....
> ... [T]his warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead.

Id. at 469-72. (Since the right to remain silent is personal, it cannot be deemed waived simply because an attorney is present during interrogation. *See* Moran v. Burbine, 475 U.S. 412, 433 n. 4 (1986) (stating that "[t]he Fifth Amendment right against self-incrimination is a personal right that can only be invoked by the individual whose testimony is being compelled" (internal quotation marks and citations omitted)); United States v. Nobles, 422 U.S. 225, 233 (1975) (opining that

5

"[t]he Fifth Amendment privilege against compulsory self-incrimination is an intimate and personal one, which protects a private inner sanctum of individual feeling and thought and proscribes state intrusion to extract self-condemnation" (internal quotation marks and citations omitted));

Further, the right to the presence of counsel is separate and distinct from the right to remain silent. Miranda, 384 U.S. at 474; Michigan v. Mosley, 423 U.S. 96, 104 n. (1975). To relieve the duty of law enforcement officers to inform a defendant of those rights prior to custodial interrogation would defeat the very purpose of Miranda warnings. Cf. Simmons v. United States, 390 U.S. 377, 394 (1968) ("In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another."). Hence, the presence of Troiano's counsel did not obviate the need to warn Troiano that he had the right to remain silent.

Troiano simply desires to assert his constitutional right to testify on his own behalf at trial. The right to testify in one's own behalf arises independently from three separate amendments to the Untied States Constitution. It is one of the rights guaranteed by the due process clause of the fourteenth amendment as essential to due process of law in a fair adversary process. It is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony, since every criminal defendant has the right to testify in his or her defense, or to refuse to do so. Also, the right to testify is guaranteed through the compulsory process clause of the Sixth Amendment.

Troiano's constitutional right to testify in his own behalf is impaired, and indeed obliterated, by the ability of the government to cross-examine him with respect to his purported July 11, 2005 statements. The language of the June 27, 2005 letter, along with Troiano's understanding of the letter and the other circumstances surrounding his statements, render any purported waiver by Troiano

6

unknowing and involuntary. Moreover, there was not the basic recitation of Troiano's *Miranda* prior to the custodial interrogation.

For the foregoing reasons, Troiano submits that any evidence relating to his July 11, 2005 statements be precluded from use at trial.


Respectfully submitted,

_____
Todd Eddins

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was duly served upon the following parties via hand delivery on March 6, 2006.

CLARE CONNORS
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850


PAMELA TAMASHRIO
Ocean View Center
707 Richards Street, PH 7
Honolulu, Hawaii 96813

Attorney for DEFNDANT WENDELL TOKI


DATED: Honolulu, Hawaii, March 6, 2006

_____
TODD EDDINS
ATTORNEY FOR JAMES TROIANO