IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 05-00261 HG |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT** |
| | ) | **TROIANO'S MOTION FOR** |
| vs. | ) | **SEVERANCE OF DEFENDANTS** |
| | ) | |
| JAMES TROIANO,     (01) | ) | |
|     aka: "JOHN KLATT", | ) | |
| | ) | |
| WENDELL K. TOKI,   (02) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT TROIANO'S MOTION FOR
SEVERANCE OF DEFENDANTS**

Defendant James Troiano ("Troiano") has moved to sever his case from Defendant Wendell Toki's ("Toki") case. Troiano contends that severance is warranted because a joint trial would violate his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution and because the defendants' defenses are mutually exclusive.

Toki gave a statement to a government agent. The United States proposed having the government agent testify as to Toki's statement during its case in chief without any reference to Troiano. The Court finds that this testimony, when viewed in light of its context and Toki's counsel's anticipated cross-

examination of the government agent, raises Confrontation Clause concerns. The Court also finds that the defendants' theories of defense are sufficiently antagonistic that severance is warranted to protect both defendants' constitutional right to a fair trial. Defendant Troiano's Motion for Severance of Defendants is **GRANTED**.

## BACKGROUND

The Superseding Indictment charges Defendant with:

(1) Count 1 - conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §§ 1951 and 2;

(2) Count 2 - Hobbs Act robbery in violation 18 U.S.C. §§ 1951 and 2;

(3) Count 3 - the use of a firearm during Hobbs Act robbery in violation of 18 U.S.C. § 924(c); and

(4) Count 4 - being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e).

The Government contends that the evidence at trial will demonstrate the following:

In the early morning hours of May 9, 2005, Troiano attacked Milton Agader ("Agader"), the owner of The Brown Bottle, a liquor store in Waialua, Hawaii, as he entered the store. Troiano allegedly hit Agader in the face with the gun and forced him inside the store. Troiano and his co-conspirator, Tony Esparza ("Esparza"), then took approximately $14,000 from the safe and

the automated teller machine (ATM) located in the store. During the robbery, Troiano and Esparza alternated holding Agader on the ground at gunpoint.

After they left The Brown Bottle, Troiano and Esparza checked into the Ohana Waikiki Surf Hotel. Troiano used a license in the name of "John Klatt." On May 10, 2005, the Honolulu Police Department arrested Troiano. Hotel security entered the hotel room and found, among other things, a Colt .45 pistol and approximately $4,000 in U.S. currency.

On May 4, 2005, five days prior to the robbery, Troiano and co-defendant Wendell Toki discussed the layout of The Brown Bottle. Toki's mother worked at The Brown Bottle. Toki had also worked at The Brown Bottle and was familiar with Agader's routine.

On May 18, 2005, Toki gave a statement to Detective Brian Johnson of the Honolulu Police Department ("Detective Johnson"). In the statement, Toki discussed his May 4, 2005 conversation with Troiano and other pre- and post-robbery events. According to the statement, Toki told Troiano the location of the safe and that Agader had the combination to the ATM. Toki told Troiano that on Monday mornings the safe contained more proceeds from the previous Sunday. Toki asked Troiano not to rob The Brown Bottle while his mother was there. Following the robbery, Troiano provided Toki with approximately $5,000, which the United States

contends was Toki's share of the money taken from The Brown Bottle.  Toki claims that Troiano gave him the money for a chicken which Troiano purchased from him for chicken fighting.

## PROCEDURAL HISTORY

On February 23, 2006, Troiano filed a Motion for Severance of Defendants (Doc. 79, "Motion for Severance".)

On March 9, 2006, the United States filed an Opposition to Defendant Troiano's Motion for Severance of Defendants (Doc. 99, "Gov. Opp.".)

On March 17, 2006, this matter came on for hearing.  After argument, the Court took Troiano's Motion for Severance under advisement.

On March 20, 2006, the United States filed a Supplemental Opposition to Defendant Troiano's Motion for Severance (Doc. 117.)

On March 21, 2006, Troiano filed a Supplemental Memorandum in Support of Motion for Severance of Defendants (Doc. 121.)

On March 22, 2006, the United States filed a Second Supplemental Opposition to Defendant Troiano's Motion for Severance of Defendants (Doc. 123.)

On March 22, 2006, Defendant Toki filed a Memorandum and Position Re: Troiano's Motion for Severance (Doc. 129.)

On March 23, 2006, the Court held a final pretrial conference.

During the March 23, 2006 conference, the Court informed the parties that it was granting Defendant Troiano's "Motion for Severance of Defendants" and that the defendants would be tried separately.

On March 28, 2006, Toki entered a guilty plea, thereby eliminating the need for two separate trials.  Troiano's trial is scheduled to proceed on April 4, 2006.

## STANDARD OF REVIEW

Generally, Fed. R. Crim. P. 8(b) permits joinder of defendants who allegedly committed the same crime.  Although joinder promotes efficiency, Fed. R. Crim. P. 14 provides that trials may be severed where it appears that a joint trial would cause prejudice.  The defendant seeking severance must establish "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro v. United States, 506 U.S. 534, 539 (1993).  Under Fed. R. Crim. P. 14, the Court has broad discretion to grant or deny requests to sever joined defendants after balancing the interest in judicial economy against the risk of prejudice to the defendant.  See e.g., United States v. Olson, 504 F.2d 1222, 1224 (9th Cir. 1974).

## ANALYSIS

Troiano argues that his trial should be severed from co-

defendant Toki because: (1) the use of Toki's statement deprives him of his Sixth Amendment right to confront witnesses against him; and (2) Troiano's and Toki's anticipated defenses are mutually exclusive.

## I. Confrontation Clause

### A. Legal Framework

The Confrontation Clause of the Sixth Amendment of the United States Constitution guarantees the right of a criminal defendant "'to be confronted with the witnesses against him.'" Richardson v. Marsh, 481 U.S. 200, 206 (1987).  "The right of confrontation includes the right to cross-examine witnesses." Id.

In Bruton v. United States, 391 U.S. 123 (1968), the United States Supreme Court held that a defendant's Sixth Amendment right to confrontation is violated where an unredacted facially incriminating confession of a co-defendant is introduced at the defendants' joint trial and the confessing co-defendant does not testify.  The Court found a Sixth Amendment Confrontation Clause violation even though the trial court instructed the jury to consider the confession only as evidence against the confessing defendant.  The Court recognized that while a limiting instruction may provide adequate protection in certain circumstances:

> [T]here are some contexts in which the risk that the jury

>will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial . . .

Id. at 135-36.

The Court in Richardson v. Marsh, 481 U.S. 200 (1987) explained the limitations of the holding in Bruton. In Marsh, the trial court admitted a non-testifying co-defendant's confession. The confession had been redacted to omit not only the other defendant's name, but any reference to her existence. The trial court also instructed the jury that the confession was not to be used as evidence against the other defendant. The Marsh Court distinguished Bruton because in Bruton the codefendant's confession "expressly implicat[ed]" the defendant as his accomplice. Marsh, 481 U.S. at 208 (citing Bruton, 391 U.S. at 124)). By contrast, the prosecution redacted the confession in Marsh to eliminate any reference to the defendant's existence. After redaction, the confession was not incriminating on its face, but only became so when linked with evidence introduced later at trial. Id.

In certain instances, redaction may not be sufficient to cure a Confrontation Clause problem. A redacted confession in which the defendant's name is replaced by a blank space, the word "deleted", or a similar symbol is insufficient to protect the

defendant's rights under the Confrontation Clause.  See Gray v. Maryland, 523 U.S. 185, 197 (1998).  In United States v. Peterson, 140 F.3d 819, 822 (9th Cir. 1998), the court applied Gray, and held that the redaction of the defendant's name for "person X" was clearly impermissible.  In the context, it was obvious that the prosecution had redacted the defendant's name from the statement.

The American Bar Association Standards for Criminal Justice also provide guidance in situations involving joint trials and codefendant confessions.  ABA Standards for Criminal Justice 13-3.2, entitled "Severance of defendants" provides, in part:

> (a)  When a defendant moves for severance because an out-of-court statement of a codefendant makes reference to, but is not admissible against, the moving defendant, the court should determine whether the prosecution intends to offer the statement in evidence as part of its case in chief. If so, the court should require the prosecuting attorney to elect one of the following courses:
>
>> (i)  a joint trial at which the statement is not admitted into evidence.
>>
>> (ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the statement will not prejudice the moving defendant, or
>
> (iii) severance of the moving defendant.

**B.    The Parties' Positions**

The United States did not intend to introduce the transcript or audio-taped recording of Toki's statement.  Instead, during its case in chief, the United States intended to introduce Toki's

8

statement through Detective Johnson, who conducted Toki's interview. (Gov. Opp. at 6.) The United States represented that neither Troiano's name nor any testimony that would identify Troiano specifically would be mentioned during the testimony concerning Toki's statement. (Id. at 7.) The United States also proposed a limiting instruction in which the Court would instruct the jury to consider Detective Johnson's testimony regarding Toki's statement only as to Toki and not as to Troiano.

While the United States indicated that it would not elicit testimony about Toki's statement that would specifically identify Troiano, Toki's counsel indicated that she believed she had a right to elicit such information in support of Toki's defense. Toki contended that his right to cross-examine Detective Johnson about his statement includes the right to cross-examine him regarding the circumstances under which he provided the information about The Brown Bottle to Troiano. At the March 17, 2006 hearing, Toki explained that his defense was to paint Troiano as a predator who bullied him into providing the information about The Brown Bottle. Toki contended that he would be unable to develop his predator defense if the Court did not permit him to establish that the individual he gave the information to was Troiano.

Toki's counsel also represented that she intended to vigorously cross-examine Detective Johnson regarding the

voluntariness of Toki's statement. Under Section 3501, Title 18 of the United States Code, the jury is permitted to hear relevant evidence on the issue of voluntariness. Toki contended that he has a limited ability to read and write and that Detective Johnson exploited his limited ability. As evidence of his limited writing ability, Toki, during cross-examination of Detective Johnson, contended that the Court should permit him to introduce a Honolulu Police Department form entitled "Photographic Lineup # ___" as an exhibit. (Toki's Mem. at Exhibit 1.) The form indicates that Toki identified Troiano as the suspect in the case, but shows, according to Toki, that he had a hard time writing and spelling "James Troiano". Toki urged the Court to proceed with a joint trial, but preclude the United States from using Toki's statement in its case in chief.

The United States argued that the Court should provide a limiting instruction that would restrict Toki counsel's cross-examination of Detective Johnson. The United States proposed preventing Toki's counsel from eliciting statements Toki made to Detective Johnson that are beyond the scope of direct. In particular, the United States contended that Toki's counsel cannot elicit testimony that the unidentified individual Detective Johnson will testify about is Troiano.

### C. The Court's Analysis

Under the circumstances present here, the Court finds that

the introduction of Toki's statement through Detective Johnson's testimony during the United States' case in chief does not solve the potential Confrontation Clause problem.  Although Detective Johnson will not name Troiano or otherwise specifically identify him, it will be evident from the context that it was Troiano to whom Toki provided detailed information about The Brown Bottle.

In Marsh, the Supreme Court recognized that there are some instances in which a redacted confession is admissible when it is not incriminating on its face, but only becomes so when linked with evidence introduced later at trial.  This case, however, involves more than a linkage between various pieces of evidence.  Rather, as discussed below, central to Toki's defense is that Troiano took advantage of Toki and manipulated him into divulging information about the layout of The Brown Bottle.  Even if Toki's counsel were not allowed to elicit direct testimony from Detective Johnson on cross regarding Troiano, it would become apparent to the jury that, in his statement, Toki had identified Troiano as the other guy to whom he gave this information.  Unless Toki chose to testify, Troiano would be unable to cross-examine him.

The Court observes that the United States' proposed redactions and limiting instructions are problematic.  Given the context of Toki's statement and the prior relationship between Toki and Troiano, the statement will implicate Troiano even if he

is not specifically named.  The Court is also concerned about restricting Toki's ability to cross-examine Detective Johnson regarding Toki's own statement to the extent requested by the United States.  Toki, for example, is allowed to cross-examine Detective Johnson regarding the voluntariness of his statement. Toki's counsel's proffered cross-examination, including the use of a photographic lineup in which Toki identified Troiano as the robbery suspect, implicates Troiano and without Toki on the stand, Troiano is unable to confront him as he has a right to do under the Sixth Amendment.

The Court, however, need not decide whether there is any solution to alleviate the Confrontation Clause problem and allow a joint trial to proceed because, as discussed below, Toki's and Troiano's defenses are sufficiently mutually exclusive to warrant severance.

## II.  **Mutually Exclusive Defenses**

### A.  **Legal Framework**

Defendants' defenses are mutually exclusive where "the core of [one] codefendant's defense is so irreconcilable with the core of [the other codefendant's] own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant."  United States v. Throckmorton, 87 F.3d 1069, 1072 (9th Cir. 1996).  While "[m]ere inconsistency in defense positions is insufficient' to warrant severance", the

12

"probability of reversible prejudice increases as the defenses move beyond the merely inconsistent to the antagonistic." United States v. Mayfield, 189 F.3d 895, 899 (9th Cir. 1999) (quoting United States v. Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991)); see also Mayfield, 189 F.3d at 899-900 (citing Tootick, 952 F.2d at 1082). "Mutual exclusivity may exist when 'only one defendant accuses the other, and the other denies any involvement.'" Tootick, 952 F.2d at 1081 (citing United States v. Romanello, 726 F.2d 173, 177 (5th Cir. 1984)).

In Tootick, the Ninth Circuit Court of Appeals identified a number of the concerns presented where defendants advocating mutually exclusive defenses are joined in a single trial. Tootick, 952 F.2d at 1082. There is, for example, a concern that the codefendant's counsel will act as a "second prosecutor" and "do everything possible to convict the other defendant." Id. Codefendant's counsel may cross-examine the government's witnesses in order to emphasize the exclusive guilt of the other defendant. Id.

**B.   Defendants' Defenses Are Sufficiently Antagonistic to Warrant Severance**

This case is not one in which one defendant has directly accused the other defendant of the very same conduct with which he was charged. In Tootick, for instance, each codefendant accused the other of committing a brutal stabbing. Still, examination of the defendants' proffered defenses in this case

13

shows that they are sufficiently antagonistic to warrant severance.

At trial, the United States intended to show that Toki conspired to rob The Brown Bottle by providing detailed information regarding the store layout, the ATM, and the store safe to Troiano. Toki's proffered defense was that Troiano was a "predator" who bullied or manipulated him into providing this information. Troiano's anticipated defense is that he did not commit the robbery. If the jury believed Toki's defense, it is highly unlikely that Troiano would have been acquitted. Toki's counsel anticipated making every effort to paint Troiano as the manipulative mastermind behind the robbery. By claiming that Troiano deceived or forced him into providing information about The Brown Bottle, Toki is, in essence, saying that Troiano is responsible and the jury should convict Troiano, and not him, for the robbery. In other words, in denying culpable involvement, Toki is accusing Troiano. See Tootick, 952 F.2d at 1081.

The problem presented by Toki's antagonistic defense, together with the Confrontation Clause issues discussed above, weighs strongly in favor of severance so as to safeguard both Defendant Toki's and Defendant Troiano's right to a fair trial. While a joint trial is normally in the interest of efficiency and substantial public interest, severance is appropriate under the circumstances of this case.

**CONCLUSION**

For the foregoing reasons, Defendant Troiano's Motion for Severance of Defendants (Doc. 79) is **GRANTED**.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 4, 2006.



_____
Helen Gillmor
Chief United States District Judge

_____
Crim. No. 05-00261 HG-01, United States v. James Troiano, aka "John Klatt"; ORDER GRANTING DEFENDANT TROIANO'S MOTION FOR SEVERANCE OF DEFENDANTS.