IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,    )   CR. NO. 05-00261 HG-01
                      )
          Plaintiff,   )
                      )
        vs.         )
                      )
JAMES TROIANO,         )
                      )
          Defendant.   )
                      )
_____)

**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 383)**

Defendant James Troiano is seeking to reduce his 24-year term of imprisonment after a jury verdict found him guilty of:

**Count 1:** **Conspiracy To Commit A Hobbs Act Robbery** in violation of 18 U.S.C. §§ 1951 and 2;

**Count 2:** **Hobbs Act Robbery** in violation of 18 U.S.C. §§ 1951 and 2;

**Count 3:** **Use Of Firearm During A Hobbs Act Robbery** in violation of 18 U.S.C. § 924(c); and

**Count 4:** **Felon In Possession Of A Firearm** in violation of 18 U.S.C. §§ 922(g)(1); 924(e).

(Superseding Indictment, ECF No. 59; Amended Judgment, ECF No. 345).

Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a), claiming extraordinary and compelling reasons for his release under United States Sentencing Guideline § 1B1.13(b)(6) for a purported "unusually long sentence."

Defendant has not presented any extraordinary or compelling

reason that would support a reduction in his sentence.

In addition, the sentencing factors set forth in 18 U.S.C. § 3553(a) do not support a sentence reduction.

Defendant's MOTION FOR SENTENCE REDUCTION (ECF No. 383) is **DENIED.**

## PROCEDURAL HISTORY

On October 5, 2005, the Government filed a four-count Superseding Indictment as to Defendant Troiano and another defendant for robbing a liquor store at gunpoint and assaulting the owner. (ECF No. 59). The Superseding Indictment charged Defendant Troiano, as follows:

**Count 1:** knowingly and willfully conspiring with others to obstruct and affect commerce and the movement of articles and commodities in such commerce, by robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Conspiracy To Commit Hobbs Act Robbery);

**Count 2:** knowingly and willfully obstructing and affecting commerce and the movement of articles and commodities in such commerce, by robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Hobbs Act Robbery);

**Count 3:** knowingly carrying and brandishing a firearm during and in relation to a crime of violence, to wit: conspiracy and Hobbs Act robbery as charged in Counts 1 and 2 of this Superseding Indictment in violation of 18 U.S.C. § 924(c) (Use Of Firearm During Hobbs Act Robbery); and

**Count 4:** having been convicted of a crime punishable for a term exceeding one year, did knowingly possess in and affecting commerce a firearm in violation of 18 U.S.C. §§ 922(g)(1); 924(e) (Felon In Possession Of A Firearm).

(ECF No. 59).

On April 19, 2006, after seven days of trial, the jury found Defendant Troiano guilty on all four counts in the Superseding Indictment.  (ECF Nos. 181, 183).

On August 24, 2006, the Court sentenced Defendant Troiano to a term of imprisonment of 17 years as to each of Counts 1, 2, and 4 to be served concurrently with each other, followed by a 7-year term as to Count 3, to be served consecutively to the terms imposed for Counts 1, 2, and 4, for a total of 24 years imprisonment.  (Judgment, ECF No. 218).

On December 12, 2007, the Ninth Circuit Court of Appeals affirmed Defendant's conviction and sentence.  (ECF No. 273).

On April 14, 2008, the United States Supreme Court denied Defendant's request for certiorari.  Troiano v. United States, 552 U.S. 1330 (2008).

On April 14, 2009, Defendant filed a MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY.  (ECF No. 283).

On August 19, 2009, the Court issued an ORDER DENYING JAMES TROIANO'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255.  (ECF No. 298).

Six years later, on June 26, 2015, the United States Supreme Court issued its opinion in Johnson v. United States, 576 U.S. 591 (2015).

On September 16, 2016, the Ninth Circuit Court of Appeals

granted Defendant's application to file a second or successive Section 2255 Motion.  (ECF No. 323).

On August 25, 2017, the District Court issued its ORDER GRANTING, IN PART, AND DENYING, IN PART, PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY.  (ECF No. 340).

The District Court found that Defendant Troiano's sentence as to Count 4 for Felon in Possession of a Firearm was no longer subject to enhancement pursuant to the Armed Career Criminal Act following the United States Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015).  The District Court denied all other aspects of Defendant's Section 2255 Motion.

On December 7, 2017, the District Court issued an ORDER CORRECTING THE SENTENCE OF DEFENDANT JAMES TROIANO AS TO COUNT 4 IN THE SUPERSEDING INDICTMENT.  (ECF No. 344).

Also on December 7, 2017, the Court issued an AMENDED JUDGMENT.  (ECF No. 345).  Defendant's sentence as to Count 4 was corrected to 10-years rather than 17-years imprisonment.  (Id.) Defendant's total sentence of confinement of 24-years imprisonment remained unaltered.  (Id.)

On December 14, 2017, Defendant filed a REQUEST FOR CERTIFICATE OF APPEALABILITY.  (ECF No. 346).

On February 5, 2018, the Court issued an ORDER GRANTING, IN PART, AND DENYING, IN PART, PETITIONER'S REQUEST FOR A CERTIFICATE OF APPEALABILITY.  (ECF No. 351).

4

Also on February 5, 2018, Defendant filed an appeal to the Ninth Circuit Court of Appeals.

On March 22, 2019, the Ninth Circuit Court of Appeals issued a published opinion, affirming the District Court's order correcting the Defendant's sentence and denying Petitioner's Motion to Expand the Certificate of Appealability.  (ECF No. 353).

On June 17, 2019, the United States Supreme Court denied Defendant's request for a writ of certiorari.  (ECF No. 357).

On October 22, 2019, Defendant filed, pro se, his Third Section 2255 Motion.  (ECF No. 358).

On March 31, 2020, the Court issued an ORDER DENYING PETITIONER JAMES TROIANO'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND DENYING A CERTIFICATE OF APPEALABILITY.  (ECF No. 363).

On April 2, 2020, Defendant filed a Notice of Appeal to the Ninth Circuit Court of Appeals.  (ECF No. 364).

On May 15, 2020, the Ninth Circuit Court of Appeals denied Defendant's certificate of appealability as to his Third Section 2255 Motion.  (ECF No. 366).

On June 30, 2020, the Untied States Supreme Court denied Defendant's request for a writ of certiorari.  (ECF No. 368).

On March 14, 2022, Defendant filed his Fourth Section 2255 Motion, which the District Court referred to the Ninth Circuit Court of Appeals as a request for a successive habeas petition

pursuant to Ninth Circuit Court of Appeals Rule 22-3(a).  (ECF No. 370).

On May 23, 2022, the Ninth Circuit Court of Appeals denied Defendant's Fourth Section 2255 Motion.  (ECF No. 372).

On July 25, 2022, Defendant filed a Fifth Section 2255 Motion with the Ninth Circuit Court of Appeals.  (ECF No. 373).

On December 14, 2023, the Ninth Circuit Court of Appeals denied Defendant's Fifth Section 2255 Motion.  (ECF No. 377).

On February 5, 2024, Defendant, proceeding pro se, filed a Motion for Compassionate Release and a Request for Appointment of Counsel.  (ECF No. 379).

On February 15, 2024, the Court denied Defendant's request for appointment of counsel.  (ECF No. 380).

On February 28, 2024, the Federal Public Defender's Office sent the Court a letter stating that it had agreed to represent Defendant in seeking compassionate release and requested leave to file a new Motion for Compassionate Release on behalf of Defendant Troiano.  (ECF No. 381).

On February 29, 2024, the Court issued a Minute Order striking Defendant's pro se Motion for Compassionate Release and approving the request of the Federal Public Defender's Office to represent Defendant and file a new Motion for Compassionate Release.  (ECF No. 382).

On June 4, 2024, Defendant, with the assistance of counsel, filed a MOTION TO REDUCE SENTENCE.  (ECF No. 383).

On June 4, 2024, the Court issued a briefing schedule.  (ECF No. 384).

On July 2, 2024, the Government filed a request to continue the briefing schedule.  (ECF No. 385).

Also on July 2, 2024, the Court granted the Government's request and issued an amended briefing schedule.  (ECF No. 386).

On July 26, 2024, the Government filed its Opposition to Defendant's Motion to Reduce Sentence.  (ECF No. 387).

On August 29, 2024, Defendant filed his Reply.  (ECF No. 388).

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## STANDARD OF REVIEW

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances.  Dillon v. United States, 560 U.S. 817, 824-25 (2010).

On December 21, 2018, Congress passed the First Step Act of 2018.  PL 115-391, December 21, 2018, 132 Stat. 5194.  The First Step Act amended 18 U.S.C. § 3582(c), the statute governing the limited circumstances under which the trial court may evaluate a motion for reduction of sentence.

The First Step Act altered the statute in Title 18, Section 3582(c)(1)(A) to allow a defendant to request that the trial

court reduce his sentence through a motion for compassionate release, but the statute requires the defendant to first present his request for release to the Bureau of Prisons.  18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment...after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)  extraordinary and compelling reasons warrant such a reduction;
>
> ...
>       and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

## SECTION 3582(c)(1)(A) AS AMENDED BY THE FIRST STEP ACT

### A.   Mandatory Procedural Requirement

The statute allows the Court to consider a defendant's request for compassionate release only after the defendant has first presented his request to the Bureau of Prisons ("BOP").  18 U.S.C. § 3582(c)(1)(A); United States v. Keller, 2 F.4th 1278, 1282 (9th Cir. 2021).

The Parties agree that Defendant Troiano exhausted his

8

administrative remedies for his Motion to Reduce Sentence (ECF No. 383).

**B.    Basis For Defendant's Motion For Compassionate Release**

If a defendant has complied with the mandatory procedural requirement set forth in 18 U.S.C. § 3582(c)(1)(A), the District Court may reduce a term of imprisonment, including the grant of compassionate release, upon finding "extraordinary and compelling reasons."

The Ninth Circuit Court of Appeals has explained that reduction in a sentence based on extraordinary and compelling reasons pursuant to Section 3582(c)(1)(A) is a "narrow" remedy and the decision to grant such relief is discretionary with the District Court, and relief is not mandatory.  United States v. Wright, 46 F.4th 938, 944-45 (9th Cir. 2022).

**1.    Extraordinary And Compelling Reasons As Set Forth In The United States Sentencing Guidelines**

Section 3582(c)(1)(A) itself does not define extraordinary and compelling reasons.  Congress delegated its authority to the United States Sentencing Commission to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  See United States v. Aruda, 993 F.3d 797, 800 (9th Cir. 2021).

Following the passage of the First Step Act, in 2023, the

United States Sentencing Commission amended its Policy Statement governing motions for compassionate release in Section 1B1.13(a).

Since the amendments, the Ninth Circuit Court of Appeals' decision in Aruda is no longer good law to the extent that it held that the policy statements of the United States Sentencing Commission are not binding on the district courts in considering motions for compassionate release. United States v. Kaneko, Cr. No. 19-00062 JMS-01, 2024 WL 1018362, *2 (D. Haw. Mar. 8, 2024); United States v. Arcila,716 F.Supp.3d 1052, 1055 (D. Or. 2024); United States v. Ciarlo, 2024 WL 2782506, *3 (W.D. Wash. May 30, 2024).

Since the November 1, 2023 amendments to the United States Sentencing Guidelines, a defendant seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) must show extraordinary and compelling reasons to reduce the sentence that are consistent with the current version of U.S.S.G. § 1B1.13. Kaneko, 2024 WL 1018362, at *2.

Section 1B1.13(b) sets forth several, specific extraordinary and compelling reasons which may form—individually or in combination—the basis to reduce a sentence:

(1)   certain medical circumstances of the defendant;

(2)   age of the defendant coupled with health issues;

(3)   certain family circumstances of the defendant;

(4)   whether the defendant was a victim of sexual or physical abuse while in custody;

(5)   other circumstances (or a combination of circumstances)

10

"similar in gravity" to (1)-(4);

(6) defendant received an unusually long sentence.

U.S.S.G. § 1B1.13(b).

The United States Sentencing Commission in amending Section 1B1.13 also limited the Court's ability to consider changes in law in evaluating a Motion for Compassionate Release. <u>United States v. Smith</u>, 2024 WL 1374722, *3 (D. Mont. Apr. 1, 2024). In 1B1.13(c), the Commission explained as follows:

> LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

U.S.S.G. § 1B1.13(c).


**2. Evaluation Of 3553(a) Factors Not Required If Extraordinary And Compelling Reasons Not Established**

The Ninth Circuit Court of Appeals has explained that the District Court may consider both "extraordinary and compelling" reasons and the relevant § 3553(a) factors in evaluating a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A), but that the District Court may deny compassionate release on either basis alone. <u>Wright</u>, 46 F.4th at 945.

11

A District Court need not follow any sort of "sequential step-by-step analysis" in evaluating a compassionate release motion filed pursuant to 18 U.S.C. § 3582(c)(1)(A).  Keller, 2 F.4th at 1284.

## ANALYSIS

Defendant Troiano is 56 years old.  Defendant is currently incarcerated at Federal Correctional Institution Phoenix in Arizona.

Defendant seeks compassionate release, alleging he was sentenced to an unusually long sentence pursuant to United States Sentencing Guideline § 1B1.13(b)(6).

## I.    Defendant Has Not Established Extraordinary And Compelling Reasons For Compassionate Release

Defendant bears the burden to demonstrate an extraordinary and compelling reason that warrants compassionate release from incarceration pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  United States v. Kanohokula, 572 F.Supp.3d 895, 901 (D. Haw. 2021).

### A.    United States Sentencing Guideline Section 1B1.13 And The Sentencing Commission's Policy Statements Are Binding In Considering A Motion For Compassionate Release

Defendant argues that the Court should disregard the limitations set forth by the United States Sentencing Commission in its amendments to the United States Sentencing Guidelines

12

issued on November 1, 2023 in Section 1B1.13(b) and (c). Defendant requests that the Court rely on non-retroactive changes in law, conduct a full re-evaluation and calculation of each sentencing guideline based on the law as it currently exists, and grant Defendant compassionate release.

The Court disagrees with Defendant's argument that the Court may ignore the United States Sentencing Guidelines and the policy statements set forth in the November 1, 2023 amendments to the United States Sentencing Guidelines in Section 1B1.13.

To the contrary, the Court agrees with the numerous courts that have ruled that United States Sentencing Guideline's November 1, 2023 amendments to Section 1B1.13 expressly apply to motions for compassionate release filed before the district courts and that such amendments are binding. See Kaneko, 2024 WL 1018362, at *2 (collecting cases); United States v. Brown, 2023 WL 8650290, *3 (W.D. Wash. Dec. 14, 2023); see also United States v. Roper, 72 F.4th 1097, 1100 (9th Cir. 2023) (stating that Congress placed only two limitations on extraordinary and compelling reasons, with one being that district courts are bound by any Guideline policy statement issued by the United States Sentencing Commission).

### 1. Defendant Is Not Eligible For A Sentence Reduction Based On A Purported Unusually Long Sentence

The only basis for compassionate release in Defendant's Motion is based on his alleged "unusually long sentence" as set

forth in U.S.S.G. § 1B1.13(b)(6).  The term "unusually long sentence" is defined as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

In order to be eligible for compassionate release pursuant to Section 1B1.13(b)(6), Defendant must demonstrate that:

(1)   he was sentenced to an unusually long sentence,

(2)   he has served at least ten years in prison at the time of his Motion for Compassionate Release, and

(3)   he is subject to a change in sentencing law (other than an amendment to the United States Sentencing Guidelines that has **not** been made retroactive) that means he is now serving a grossly disparate sentence.

See United States v. Torres-Guardado, 2024 WL 2818625, *2 (D. Mont. June 3, 2024).

The Parties agree that Defendant has served at least ten years in prison.

Defendant, however, has not demonstrated that he was sentenced to an unusually long sentence.  Defendant has also not demonstrated that there has been an applicable change in sentencing law and that he is now serving a grossly disparate sentence.

**2.    Defendant Was Not Sentenced To An Unusually Long Sentence**

Defendant Troiano has failed to demonstrate that he is serving an "unusually long sentence" within the meaning of Section 1B1.13(b)(6).

At the time of Defendant Troiano's sentencing, his advisory sentencing guideline calculations were 360 months to life. (Presentence Report at ¶¶ 81-83).  Defendant was sentenced well below the advisory guidelines.  The Court sentenced Defendant to 204 months as to Counts 1, 2, and 4, and 84 months as to Count 3, which was required to be served consecutively to the sentence for Counts 1, 2, and 4, for a total of 288 months imprisonment.

A below-guidelines sentence, by its very nature, cannot be considered unusually long pursuant to Section 1B1.13(b)(6). United States v. Steidell, Crim. No. 12-01259 DKW-02, 2024 WL 1414195, *5-*6 (D. Haw. April 2, 2024) (citing Rita v. United States, 551 U.S. 338, 346-47 (2007)).  Defendant's Motion fails on this basis alone.

**3.    Defendant Has Not Been Subject To An Applicable Change In Sentencing Law Pursuant To Section 1B1.13(b)(6)**

Defendant's Motion for a reduction in sentence is entirely premised on changes to the United States Sentencing Guidelines that have **not** been made retroactive.  Guideline amendments that are not retroactive do not qualify as a basis for compassionate

15

release.  United States Sentencing Guideline § 1B1.13(b)(6) explicitly states that "an amendment to the Guidelines Manual that has not been made retroactive" does not apply to a Motion for Compassionate Release.  See also U.S.S.G. § 1B1.13(c).

Courts have specifically held that changes to the Career Offender Guideline are not retroactive and do not support a motion for compassionate release.  See Torres-Guardado, 2024 WL 2818625 at *2 (rejecting a motion for compassionate release under Section 1B1.13(b)(6) premised on a change in law for career offenders).

Defendant has not put forward any change in sentencing law that applies to him to lower his sentence.  Non-retroactive amendments alone do not provide a basis for compassionate release following the November 1, 2023 amendments to the United States Sentencing Guidelines.  U.S.S.G. §§ 1B1.13(b)(6), (c).

## B. Defendant Has Not Established Extraordinary And Compelling Reasons For A Sentence Reduction

Defendant has not established any other basis to find extraordinary and compelling reasons for a sentence reduction pursuant to U.S.S.G. § 1B1.13(b).  Defendant has not presented any medical or personal circumstances of similar gravity to the enumerated provisions in U.S.S.G. § 1B1.13(b) that would demonstrate extraordinary and compelling reasons to justify a reduction in sentence.

Rehabilitation is not an extraordinary and compelling reason

16

for a sentence reduction.  U.S.S.G. § 1B1.13(d); <u>United States v.</u> <u>LeCompte</u>, 2024 WL 3486492, *2 (D. Mont. July 19, 2024).  The record demonstrates, however, that even if rehabilitation was a factor, it would not support Defendant's request for a reduction in sentence.  As the Government points out, Defendant Troiano has had multiple disciplinary actions in prison, including stabbing an inmate and assaulting numerous others.  (Gov't Opp. at p. 10, ECF No. 387; Def.'s Inmate Discipline Data Report, attached as Ex. 2 to Gov't Opp., ECF No. 387-2).

Defendant's 24-year sentence is not unusually long given the nature and circumstances of the case and Defendant's prior criminal history as explained below.

## II.  Section 3553(a) Factors And Defendant's History and Characteristics Do Not Support Compassionate Release

Even if Defendant had established an extraordinary and compelling reason as required under Section 1B1.13(b), the Court in this case would exercise its discretion to deny compassionate release based on consideration of the factors set forth in 18 U.S.C. § 3553(a).  <u>Wright</u>, 46 F.4th at 945.

### A.  Defendant's Prior Criminal History

Defendant Troiano has a long criminal history that involves violence and use of firearms.  Defendant's serious criminal history does not support a reduction in sentence pursuant to 18

U.S.C. § 3582(c)(1)(A) and the Section 3553(a) factors.

On October 10, 1989, Defendant was convicted of <u>Promoting Dangerous Drugs in the Third Degree and Drug Paraphernalia</u>, Cr. No. 89-0288, in the First Circuit Court, State of Hawaii, for which he was sentenced to five years probation and nine months incarceration. (PSR at ¶ 55).  A .25 caliber semi-automatic pistol was found in the room at the time of the Defendant's arrest.  (<u>Id.</u>)  Defendant's probation was revoked following his release, and on August 22, 1991, Defendant was resentenced to five years incarceration.  (<u>Id.</u>)

On August 19, 1991, Defendant was convicted of <u>Driving Under the Influence of Intoxicating Liquor and Resisting an Order to Stop a Motor Vehicle</u>, in Hawaii State Court.  (PSR at ¶ 65). Defendant was sentenced to two weekends confinement.  (<u>Id.</u>)

On October 13, 1992, Defendant was convicted of <u>Burglary in the First Degree</u>, Cr. No. 91-1848, in the First Circuit Court, State of Hawaii, for which he was sentenced to 10 years incarceration.  (PSR at ¶ 56).  Defendant brandished a knife when the victims discovered him in their home during the burglary. (<u>Id.</u>)

Also on October 13, 1992, Defendant was convicted of a second <u>Burglary in the First Degree</u>, Cr. No. 91-2291, in the First Circuit Court, State of Hawaii, for which he was sentenced to 10 years incarceration, concurrent with resentencing in Cr. No. 89-0288 and sentencing in Cr. No. 91-1848.  (PSR at ¶ 57).

18

On July 14, 1999, Defendant was convicted of a third charge of <u>Burglary in the First Degree</u>, Cr. No. 98-0817, in the First Circuit Court, State of Hawaii, for which he was sentenced to 10 years incarceration.  (PSR at ¶ 58).

Also on July 14, 1999, Defendant was convicted of a fourth charge of <u>Burglary in the First Degree</u>, Cr. No. 98-0817, in the First Circuit Court, State of Hawaii, for which he was again sentenced to 10 years incarceration.  (PSR at ¶ 59).

Defendant was arrested for the 1999 burglary offenses while he was driving a stolen vehicle that was involved in an automobile accident.  (<u>Id.</u>)  Defendant was subject to confinement at the State of Hawaii Halawa Correctional Facility at the time of his 1999 arrest for the third and fourth burglaries.  (<u>Id.</u>)

Defendant's arrest history also demonstrates extensive interaction with the Honolulu Police Department.  Defendant's arrest record reflects arrests for various crimes including Terroristic Threatening in the First Degree, Robbery in the First Degree, Escape in the Second Degree, Theft in the Second Degree, Harassment, Imitation Controlled Substance, Driving Without a License, and Criminal Contempt of Court.  (PSR at ¶ 67).

**B.  Instant Offense Conduct**

The nature and circumstances of the instant offense also do not support a reduction in Defendant Troiano's sentence.

On April 19, 2006, after seven days of trial, the jury found

Defendant Troiano guilty on all four counts in the Superseding Indictment:

**Count 1:**   **Conspiracy To Commit A Hobbs Act Robbery** in violation of 18 U.S.C. §§ 1951 and 2;

**Count 2:**   **Hobbs Act Robbery** in violation of 18 U.S.C. §§ 1951 and 2;

**Count 3:**   **Use Of Firearm During A Hobbs Act Robbery** in violation of 18 U.S.C. § 924(c); and,

**Count 4:**   **Felon In Possession Of A Firearm** in violation of 18 U.S.C. §§ 922(g)(1); 924(e).

(Superseding Indictment, ECF No. 59; Amended Judgment, ECF No. 345).

> **1.   Defendant Troiano Engaged In A Series Of Crimes Prior To The Instant Offenses Of Conspiracy, Robbery, Use Of A Firearm, And Felon In Possession Of A Firearm**

The facts and circumstances surrounding Defendant Troiano's May 9, 2005 robbery and firearms offenses demonstrate that Defendant Troiano engaged in a series of crimes prior to committing the instant offenses.

On April 13, 2005, a black Toyota Camry was stolen from a home in Honolulu.  (PSR at ¶ 46).  The stolen Toyota Camry was used to commit the instant offense and witnesses observed Defendant driving the vehicle prior to the robbery.  (<u>Id.</u>)

Also on April 13, 2005, the home of John Klatt was burglarized and Klatt's passport and driver's license were stolen.  (<u>Id.</u> at ¶ 47).  Defendant Troiano's fingerprints were recovered from Klatt's home.  (<u>Id.</u>)

20

Again, also on April 13, 2005, another home in Honolulu was burglarized and Defendant Troiano attempted to pawn items stolen from the home at a pawn shop in Waikiki.  (Id. at ¶ 48). Defendant Troiano presented Mr. Klatt's stolen driver's license for identification at the pawn shop and Defendant Troiano's fingerprints were on the pawn ticket.  (Id.)

Two days later, on April 15, 2005, another home in Honolulu was burglarized.  (Id. at ¶ 49).  Defendant Troiano attempted to pawn items stolen from the home at the same pawn shop in Waikiki. (Id.)  Defendant again presented Mr. Klatt's stolen driver's license for identification at the pawn shop and Defendant's fingerprints were on the pawn ticket.  (Id.)

On April 18, 2005, a fourth home in Honolulu was burglarized.  (Id. at ¶ 50).  Defendant Troiano attempted to pawn items stolen from the fourth home at the same pawn shop in Waikiki.  (Id.)  Defendant Troiano, for a fourth time, presented Mr. Klatt's stolen driver's license for identification at the pawn shop and Defendant Troiano's fingerprints were again on the pawn ticket.  (Id.)

A few weeks later, on May 5, 2005, a fifth home was burglarized.  (Id. at ¶ 51).  A Colt .45 handgun, jewelry, and other items were stolen.  (Id.)  Defendant Troiano attempted to pawn items stolen from the fifth home at the same pawn shop in Waikiki.  (Id.)  Defendant Troiano, for a fifth time, presented Mr. Klatt's stolen driver's license for identification at the

21

pawn shop and Defendant's fingerprints were on the pawn ticket.
(Id.)

### 2. Defendant Troiano Engaged In Violence During The Robbery And Used A Firearm

The evidence at trial and the Presentence Reports in the record reflect the following facts as to Defendant's conduct during the instant offenses:

On May 9, 2005, at approximately 5:00 a.m., Defendant Troiano attacked Milton Agader when Agader arrived at the liquor store that he owned named "The Brown Bottle."  Defendant Troiano hit Agader in the face with a firearm and forced himself inside the store.

Agader's left eye was cut and bleeding.  Defendant Troiano threatened to kill Agader if he did not give him the combination to the ATM located inside the store.

Defendant Troiano, along with his co-conspirator Tony Esparza, took approximately $2,000 from the store's safe and approximately $12,000 from the ATM located inside the store. During the robbery, Defendant Troiano and Esparza alternated holding Agader on the ground at gunpoint.

After Defendant Troiano and Esparza left The Brown Bottle, they checked into the Ohana Waikiki Surf Hotel.  Defendant Troiano used the stolen driver's license of "John Klatt" to check-in to the hotel.

On May 10, 2005, the Honolulu Police Department arrested

Defendant Troiano for driving the black Toyota Camry that was
stolen a few weeks earlier on April 13, 2005.  Hotel security
entered the hotel room Defendant Troiano had rented using the
stolen driver's license from John Klatt.  Hotel Security found in
Defendant's hotel room the Colt .45 pistol that was stolen on May
5, 2005, and was used in the robbery, along with approximately
$4,000 in cash.

### 3.   Defendant Troiano Is Not Similarly Situated To His Co-Conspirators

Defendant argues that he should have his sentence reduced
based on purported sentencing disparity between him and his co-
conspirators.

Defendant is not similarly situated to his co-conspirators.
Unlike Defendant Troiano, his co-conspirators accepted
responsibility, pled guilty, testified during Defendant Troiano's
trial, and immediately cooperated with law enforcement upon their
arrests.

The Government introduced significant evidence that
Defendant Troiano was the leader of the conspiracy and directed
the actions of his co-conspirators.

First, Esparza pled guilty to one count of Hobbs Act Robbery
pursuant to an Information (05-cr-00337HG).  Esparza testified
during Defendant Troiano's trial and immediately assisted law
enforcement in its investigation upon his arrest.  Esparza

23

testified that Defendant Troiano recruited him to rob the liquor store.  (PSR at ¶ 19).  Esparza explained that Defendant Troiano stole the black Toyota Camry and the Colt .45 that were both used to commit the robbery of the liquor store.  (Id.)

Second, Wendell Toki pled guilty to Aiding and Abetting the robbery.  (05-cr-00261 HG-02).  Toki also testified during Defendant Troiano's trial and immediately assisted law enforcement in its investigation.  Toki did not participate in the actual robbery, but he provided Defendant Troiano information that allowed Defendant Troiano to commit the instant offenses.

Toki's mother worked at The Brown Bottle and Toki sometimes assisted her there.  (PSR at ¶ 26, ECF No. 28).  Toki explained to law enforcement that Defendant Troiano approached him four or five times at his home prior to the robbery.  (PSR at ¶¶ 22, 26).  Toki raised gamecocks and Toki believed Defendant Troiano was interested in purchasing them from him.  (Id. at ¶¶ 21-22, 26).  Toki testified that during Defendant Troiano's last visit, Defendant Troiano laid a pistol on the roof of his car and discussed robbing The Brown Bottle.  (Id. at ¶ 22).  Defendant Troiano asked Toki about Agader, the ATM, and the security system at The Brown Bottle.  (Id. at ¶¶ 21, 26).  Toki told Defendant Troiano details about the store including the location of the ATM inside.  (Id.)  Toki told Defendant Troiano that if he wanted to rob the store, he would not need a firearm but would only need to scare Agader.  (Id. at ¶ 22).

24

Evidence at trial and information in Toki's Presentence Report reflect that Toki was a person of below average intelligence and that he was vulnerable to Troiano's manipulation.  Toki received a reduction in his sentencing guidelines for being a minor participant.

Defendant Troiano's co-conspirators are not similarly situated to him.  Defendant's attempt to argue sentencing disparity based on the sentences of his co-conspirators is misplaced.  Defendant Troiano's conduct as the leader of the conspiracy was far more serious and egregious than his co-conspirators.  Defendant engaged in violence and injured the victim, causing him to bleed.

Defendant Troiano has never taken responsibility for his conduct.  To the contrary, each co-conspirator testified at Defendant Troiano's trial and immediately assisted law enforcement in the investigation upon their arrests.

The Ninth Circuit Court of Appeals has repeatedly explained that there is no unwarranted sentencing disparity where co-defendants are given lower sentences based on the fact that they have been convicted of fewer offenses, cooperated with the government, or have different criminal histories.  See United States v. Osinger, 753 F.3d 939, 949 (9th Cir. 2014); United States v. Carter, 560 F.3d 1107, 1121-22 (9th Cir. 2009).

Defendant Troiano's long criminal history, engagement in various crimes prior to the instant offense, and the nature and

circumstances of the offense also distinguish him from his co-conspirators.

### 4.  Defendant's Sentence Remains Appropriate

Defendant's 24-year sentence remains appropriate considering the Section 3553(a) factors.

Defendant's immediate release would not adequately reflect the seriousness of the offenses, would not properly deter similar criminal conduct, and would not protect the public.  Defendant has a long criminal history since 1989 that involves drug trafficking, burglary, and robbery.  Defendant has engaged in violence in committing numerous crimes and has also engaged in assault and violence while incarcerated.  Defendant has also been hostile and aggressive toward law enforcement as reflected in his Presentence Report and his Inmate Report.  (Def.'s Inmate Discipline Data Report, attached as Ex. 2 to Gov't Opp., ECF No. 387-2).

Defendant Troiano has performed poorly while on supervision and had his probation revoked following multiple periods of incarceration in Hawaii state court.

Defendant committed crimes while subject to supervision and he remains a threat to the public.  Defendant has not demonstrated that a reduction in sentence is appropriate.  The factors in Section 3553(a) do not support the reduction of

Defendant Troiano's sentence.

## **CONCLUSION**

Defendant's MOTION FOR SENTENCE REDUCTION (ECF No. 383) is **DENIED.**

IT IS SO ORDERED.

Dated: October 23, 2024, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

United States v. James Troiano, Crim. No. 05-00261 HG-01; **ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 383)**